01

02

03

04

05                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
06                             AT SEATTLE

07  ROBYN D. CHAPIRSON,                )    CASE NO. C07-1413-JCC
                                       )
08          Plaintiff,                 )
                                       )
09          v.                         )    REPORT AND RECOMMENDATION
                                       )    RE: SOCIAL SECURITY
10  MICHAEL J. ASTRUE,                 )    DISABILITY APPEAL
    Commissioner of Social Security,   )
11                                     )
            Defendant.                 )
12  _____ )

13          Plaintiff Robyn D. Chapirson proceeds through counsel in her appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

15  denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income

16  (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).  Plaintiff requested oral

17  argument in her reply.  Having considered the ALJ's decision, the administrative record (AR), and

18  all memoranda of record, the Court finds oral argument unnecessary and recommends that this

19  matter be REMANDED for further administrative proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01

**FACTS AND PROCEDURAL HISTORY**

02       Plaintiff was born on XXXX, 1954.[1]  She completed high school and two years of college.

03  (AR 67.)  Plaintiff previously worked as an escrow officer, escrow assistant, and deli clerk.  (AR

04  70.)

05       Plaintiff filed a DI application in June 2004 and a SSI application in September 2004,

06  alleging disability beginning February 6, 2004 due to panic disorder, atypical facial neuralgia,

07  degenerative disc disease in her neck, migraines, and weakness in her legs and hips. (AR 14, 57-

08  59, 61.)  Her applications were denied at the initial level and on reconsideration, and she timely

09  requested a hearing.

10       ALJ Dan Hyatt held a hearing on December 5, 2006, taking testimony from plaintiff and

11  vocational expert Scott Stipe.  (AR 396-413.)  On January 12, 2007, the ALJ issued a decision

12  finding plaintiff not disabled.  (AR 14-25.)

13       Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on July

14  12, 2007 (AR 4-79), making the ALJ's decision the final decision of the Commissioner.   Plaintiff

15  appealed this final decision of the Commissioner to this Court.

16

**JURISDICTION**

17       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

18

**DISCUSSION**

19       The Commissioner follows a five-step sequential evaluation process for determining

20

---

21       [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the
22  official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

02   be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

03   engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

04   determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's

05   degenerative disc disease of the cervical spine, cervical myelopathy, facial neuralgia, and anxiety

06   disorder severe.  Step three asks whether a claimant's impairments meet or equal a listed

07   impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria for any

08   listed impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner

09   must assess residual functional capacity (RFC) and determine at step four whether the claimant

10   has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff capable of

11   medium work, with the ability to stand and walk for approximately six hours in a normal workday,

12   occasionally lift up to fifty pounds and frequently lift up to twenty five pounds, and limited to

13   work requiring no more than occasional contact with the public and coworkers for cooperative

14   tasks.  The ALJ determined that plaintiff was not able to perform her past relevant work.  If a

15   claimant demonstrates an inability to perform past relevant work, the burden shifts to the

16   Commissioner to demonstrate at step five that the claimant retains the capacity to make an

17   adjustment to work that exists in significant levels in the national economy.  Relying on the

18   testimony of the vocational expert, the ALJ concluded that plaintiff could perform other work,

19   such as work as a microfilmer, file clerk, and order clerk.

20        This Court's review of the ALJ's decision is limited to whether the decision is in

21   accordance with the law and the findings supported by substantial evidence in the record as a

22   whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

02 mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

03 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

04 decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

05 2002).

06          Plaintiff argues that the ALJ failed to give appropriate weight to the opinions of a number

07 of different medical providers, failed to properly consider her testimony, erred in concluding her

08 impairments did not meet a listing, improperly assessed her RFC, and failed to meet the burden

09 of showing she could perform other work in the national economy. She requests remand for an

10 award of benefits or, in the alternative, for further administrative proceedings before a different

11 ALJ. The Commissioner argues that the ALJ's decision is supported by substantial evidence and

12 should be affirmed.

13                                    Physicians' Opinions

14          In general, more weight should be given to the opinion of a treating physician than to a

15 non-treating physician, and more weight to the opinion of an examining physician than to a non-

16 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

17 by another physician, a treating or examining physician's opinion may be rejected only for "'clear

18 and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

19 Where contradicted, a treating or examining physician's opinion may not be rejected without

20 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

21 *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion

22 of the treating physician is contradicted, and the non-treating physician's opinion is based on

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  independent clinical findings that differ from those of the treating physician, the opinion of the

02  non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d

03  1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id.*

04        "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

05  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

06  81 F.3d at 834 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

07  plaintiff's condition met a listing) (quoting *Hammock v. Bowen* , 879 F.2d 498, 502 (9th Cir.

08  1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

09  the evidence supports a finding of disability.  *See, e.g.*, *Schneider v. Commissioner of Social Sec.*

10  *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

11  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

12  functional limitations is sufficient to meet or equal [a listing.]");      *Smolen v. Chater*, 80 F.3d

13  1273,1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony,

14  physicians' opinions, and lay testimony legally insufficient; finding record fully developed and

15  disability finding clearly required).

16        However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

17  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

18  were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

19  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

20  an undeserving, able claimant."  *Barbato v. Commissioner of Soc. Sec. Admin.* , 923 F. Supp.

21  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

22  error, in that some of his stated reasons for rejecting a physician's opinion were legally

01    insufficient).

02    A.    Dr. Bruce Bell

03          Plaintiff first points to her treating neurologist Dr. Bruce Bell.  On July 26, 2006, Dr. Bell

04    assessed "[p]ersistent neuralgic-like pain[,]" "related to the occipital nerve[]" and "a possible

05    intracranial problem[,]" as well as a seizure disorder.  (AR 262.)  Dr. Bell opined: "First of all, I

06    think this patient is disabled from this.  I do not think she can function right now until she gets this

07    under better control."  (Id.)  On August 8, 2006, Dr. Bell found plaintiff's "[c]ervical myelopathy

08    with myofascial pain, responsible for [her] symptomatology."  (AR 258.)  On that same date, Dr.

09    Bell described the results of MRI scans in a letter:

10          She has had an MRI scan of the brain, which shows a small number of T2
          hyperintense foci, probably related to small vessel ischemia.  A repeat MRI scan of
11          the brain reveals no new change in that particular situation.  She has an MRI scan of
          her cervical spine that shows a significant amount of degenerative disc disease with
12          cord compression at C5-6 and C6-7, which I think is probably responsible for her
          brisk reflexes, underlying neuralgic-like pain, and discomfort in the neck area.  There
13          is an old MRI scan of her thoracic spine, which reveals an osteophyte at T9-10 that
          probably also contributes to this particular situation.  An electroencephalograph was
14          done and was within normal limits.

15    (AR 257.)  Dr. Bell again opined that plaintiff was "disabled because of all of this[]" and "unable

16    to be employable."  (Id.)

17          The ALJ described Dr. Bell's findings (AR 17-18) and assessed his opinions as follows:

18          I have considered and given little weight to the July 2006 opinion of Dr. Bell that the
          claimant is "disabled" by impairments which he reported as persistent neuralgic-like
19          pain and a seizure disorder.  He later reported the claimant's EEG was normal and the
          diagnosis of seizure disorder was abandoned.  I have also given little weight to his
20          more recent opinion that "It is my feeling that she is disabled because of all of this
          [neuralgic-like pain in the face, muscle spasm in the neck aggravated by activity,
21          degenerative disc disease of the cervical spine and osteophyte at T9-10].  She is
          unable to be employable."  While Dr. Bell opined the claimant's brisk reflexes,
22          underlying neuralgic-like pain and neck discomfort resulted from degenerative disc

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01  disease with cord compression at C5-6 and C6-7 demonstrated by the MRI of the
cervical spine, MRI of the cervical spine performed in August 2006 revealed no
02  cervical disc herniation or significant intrinsic cord lesion.  In addition, he had earlier
reported in February 2006 that MRI of the thoracic spine showed only slight
03  osteophyte causing no significant impression.  Dr. Bell's opinion is inconsistent with
his own treatment records which reveal generally normal findings on neurologic
04  examinations and with the reports of Dr. Neville which also reveal generally normal
findings on neurologic examination.  All of the above suggests that Dr. Bell's opinion
05  is based primarily on subjective complaints of the claimant rather than upon objective
findings.

06

07  (AR 21-22; internal citations to record omitted.)

08      Plaintiff argues that the ALJ is not a medical expert and is not qualified to challenge Dr.

09  Bell's interpretation of the MRI scans, or to question the consistency of Dr. Bell's treatment notes

10  with his conclusions.  *See*, *e.g.*, *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary

11  function of medical records is to promote communication and record-keeping for health care

12  personnel -- not to provide evidence for disability determinations. We therefore do not require that

13  a medical condition be mentioned in every report to conclude that a physician's opinion is

14  supported by the record. When viewed in its entirety, the record provides ample support for the

15  opinions of Drs. Doerning and Nguyen.") Plaintiff also criticizes the ALJ's reliance on the opinion

16  of Dr. Neville, noting Dr. Neville examined her only once, six months before Dr. Bell began his

17  treatment and twenty-one months before Dr. Bell opined that she was disabled, and did not review

18  the cervical spine MRI which in Dr. Bell's opinion showed cord compression as the probable cause

19  of her neck pain.  Plaintiff contends that, for the period beginning April 2005, Dr. Bell's opinion

20  is the uncontradicted opinion of a treating specialist and should be credited as true.

21      The Commissioner does not directly respond to plaintiff's specific arguments.  Instead, he

22  reiterates the ALJ's findings with respect to Dr. Bell.

01       Dr. Bell's opinion should not be considered uncontradicted as of a certain date.  Plaintiff

02  points to no clear change in circumstance as of a certain date.  Moreover, if this were the rule, a

03  claimant would need only to secure a supportive opinion from his or her physician close in time

04  to the closing of the record in order to ensure that the opinion would be deemed uncontradicted.

05  Accordingly, the ALJ need only have provided specific and legitimate reasons supported by

06  substantial evidence in the record for according little weight to the opinions of Dr. Bell.

07       Nor does plaintiff accurately argue that the ALJ was not qualified to render his criticisms

08  of Dr. Bell.  The ALJ "is required to evaluate all evidence in the case record that may have a

09  bearing on the determination or decision of disability[.]"  Social Security Ruling (SSR) 96-5p.  An

10  ALJ may rely on the fact that a treating physician's opinion is inconsistent with his own treatment

11  notes as a reason to not give that physician's opinion controlling weight.  *See Holohan v.*

12  *Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  Also, it should be noted that Dr. Bell's opinion

13  that plaintiff is disabled is an issue reserved to the Commissioner and, therefore, is not entitled to

14  controlling weight or special significance.  SSR 96-5p.

15       Further, the ALJ provided sufficient reasons for giving little weight to the opinions of Dr.

16  Bell.  First, as noted by the ALJ, Dr. Bell's July 26, 2006 opinion as to plaintiff's disability is

17  undermined by the fact that the diagnosis of a seizure disorder as of that date was later abandoned

18  following testing. (*See* AR 262, 257-58.)  Second, the ALJ accurately notes an inconsistency

19  between Dr. Bell's August 8, 2006 letter and the August 4, 2006 MRI of the cervical spine he

20  interprets.  That is, while Dr. Bell indicates that the MRI showed "a significant amount of

21  degenerative disc disease with cord compression at C5-6, C6-7," the MRI itself relates "slight",

22  "mild", and "minimal[]" findings and reports "no cervical disc herniation or significant intrinsic

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01    cord lesion."  (AR 257, 259.)  (*See also* AR 269 (June 30, 2005 MRI of cervical spine indicated

02    C5-6 and C6-7 disc bulge/osteophyte "minimally deforms the ventral surface of the cervical cord"

03    and found "no cervical disc herniation or myelopathic changes within the cervical cord.")) Also,

04    although Dr. Bell indicated that the findings of a thoracic spine MRI probably contributed to the

05    situation, as noted by the ALJ, he had previously indicated that that MRI revealed "some slight

06    osteophyte causing no significant impression."  (AR 257, 265.)  (*See also* AR 267 ("MRI of the

07    thoracic spine shows a mild T9-10 posterior osteophyte with left lateralization not causing any

08    significant problems."))

09           Additionally, plaintiff fails to show error in the ALJ's statement that Dr. Bell's opinion is

10    inconsistent with his own generally normal findings on neurologic examinations and with the

11    findings of Dr. Neville.  Plaintiff does not demonstrate any error in the ALJ's assertion of internal

12    inconsistency between Dr. Bell's report and his examination findings.  Also, while Dr. Neville's

13    opinion was rendered earlier in time to that of Dr. Bell, it was nonetheless appropriate for the ALJ

14    to rely on the inconsistency with Dr. Neville's findings as one of several reasons for giving little

15    weight to the opinions of Dr. Bell.  In fact, "when an examining physician provides 'independent

16    clinical findings that differ from the findings of the treating physician,' such findings are

17    'substantial evidence.'"  *Orn*, 495 F.3d at 632 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th

18    Cir. 1985)).  "Independent clinical findings can be either (1) diagnoses that differ from those

19    offered by another physician and that are supported by substantial evidence, or (2) findings based

20    on objective medical tests that the treating physician has not herself considered."  *Id.* (internal

21    citations omitted).  Although Dr. Neville did not obtain the results of an MRI, he did conduct a

22    thorough clinical examination of plaintiff and found  no "evidence of neurologic compromise."

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01 (AR 179-84.)

02      In sum, the ALJ's assessment of Dr. Bell's opinions withstands scrutiny.  Plaintiff fails to

03 demonstrate any error with respect to Dr. Bell.

04 B.    Dr. Barbara Ketcham

05      Plaintiff next points to a July 19, 2004 report from Dr. Barbara Ketcham.  She complains

06 that, while the ALJ summarized this report, he did not mention Dr. Ketcham's conclusion: "Given

07 the level of distress Robyn experiences, the wide range of situations in which she feels anxious,

08 and the long-term duration of her symptoms, prognosis is guarded."  (AR 173.)  Plaintiff asserts

09 that the ALJ may not reject such "'significant probative evidence' without explanation." *Flores*

10 *v. Shalala*, 49 F.3d 562, 571 (9th Cir. 1995) (quoted source omitted).  The Commissioner

11 responds that, although Dr. Ketcham indicated the prognosis was guarded, she also noted that

12 plaintiff's symptoms were only mild in nature.  (AR 172.)

13      The ALJ stated the following with respect to Dr. Ketcham:

14      The claimant also has a history of mental health counseling for treatment of symptoms
        of anxiety related to work stress, panic while driving, and anxiety in social situation
15      [sic] which treating psychologist Barbara Ketcham, Psy.D., diagnosed as a panic
        disorder with agoraphobia. Dr. Ketcham estimated the claimant's global assessment
16      of functioning (GAF) score at 62 on July 19, 2004 and at 65 within the preceding
        year, indicating "some mild symptoms" or "some difficulty in social, occupational, or
17      school functioning, but generally functioning pretty well" (DSM-IV: Diagnostic and
        Statistical Manual of Mental Disorders, 4th edition).

18

19 (AR 17; internal citation to record omitted.)  As noted by plaintiff, the ALJ did not mention Dr.

20 Ketcham's closing remark as to the guarded prognosis.

21      Dr. Ketcham's closing remark does not undermine the substance of her opinion as to the

22 severity of plaintiff's condition and her ability to function.  Accordingly, plaintiff fails to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  demonstrate reversible error with respect to Dr. Ketcham.

02  C.      Dr. Eric Goranson

03          Plaintiff takes issue with the ALJ's assessment of the opinions of examining psychiatrist

04  Dr. Eric Goranson.  She asserts that, while citing Dr. Goranson's October 7, 2004 report with

05  approval, the ALJ failed to properly consider her complaint that Dr. Goranson was so "mean,

06  rude, and insensitive" towards her that she filed a formal complaint against him.  (*See* AR 89-90.)

07  However, the ALJ did take this complaint into consideration:

> The report and opinion of Dr. Goranson is also not fully supportive of the claimant.
> After examining her in October 2004, he reported, "It is clear, from the records, and
> from my interview with Ms. Chapirson, that she has decided that she was not going
> to work any more".  He noted that she presented in a dramatic and histrionic fashion
> and reported her impairments, which included a borderline personality disorder,
> resulted in no more than moderate difficulty in social, occupational, or school
> functioning.  It is noted that after Dr. Goranson's evaluation, the claimant submitted
> a letter of complaint against him to Disability Determination Services stating he was
> "mean, rude and insensitive" towards her.  Notes from that agency indicate Dr.
> Goranson felt the claimant was hostile to him.  However, I found nothing
> unprofessional about Dr. Goranson's report.  Because his opinion is consistent with
> the evidence of record as a whole, it is entitled to significant weight.

15  (AR 20-21; internal citations to record omitted.)  Plaintiff fails to demonstrate any error in this

16  assessment.

17  D.      Dr. Lawrence H. Moore

18          Plaintiff asserts error in the ALJ's assessment of examining psychologist Dr. Lawrence

19  Moore.  Dr. Moore evaluated plaintiff twice – in January and August 2005.  (AR 250-55, 345-50.)

20  On both occasions, Dr. Moore assessed plaintiff with marked limitations in her ability to respond

21  appropriately to and tolerate the pressures and expectations of a normal work setting and

22  estimated her to be so impaired for eight months maximum and six months minimum.  (AR 252-

01 53, 347-48.)

02     The ALJ considered Dr. Moore's opinions as follows:

03     Regarding the claimant's mental limitations, I have not given significant weight to the
       opinion of examining psychologist Lawrence Moore, Ph.D., that the claimant's
04     anxiety disorders result in marked limitations in her ability to respond appropriately
       to and tolerate the work pressures and expectations of a normal work setting. Dr.
05     Moore's opinion is inconsistent with the reports of the other treating and examining
       mental health professionals of record indicating GAF scores suggesting mild to
06     moderate impairment and generally normal mental status examinations. In addition,
       I note that Dr. Moore's report indicates his opinion that the claimant could be
07     expected to be limited to such an extent for a period of less than 12 consecutive
       months, i.e., eight months.

08

09 (AR 22; internal citation to record omitted.)

10     Plaintiff argues that the ALJ's first reason for not giving significant weight to Dr. Moore's

11 opinions is not legitimate because the ALJ failed to consider Dr. Ketcham's opinion that her

12 prognosis was guarded. However, as reflected above, the ALJ did not err in his assessment of Dr.

13 Ketcham's opinions. The ALJ accurately noted the general inconsistency between Dr. Moore's

14 opinions and GAF scores assessed by Drs. Ketcham and Goranson. (*See* AR 172 and 178.)

15     Plaintiff argues that the ALJ's second reason is refuted by the second evaluation from Dr.

16 Moore, in which he indicated that there had been little change in plaintiff's overall condition since

17 the previous evaluation, again assessed the same marked limitation, and found plaintiff to be

18 limited as such for an additional six to eight months. The Commissioner concedes that,

19 considering the two evaluations together, the aggregate time period exceeds twelve consecutive

20 months. However, he argues that "it is telling that Dr. Moore kept the time periods limited; this

21 suggests he foresaw the potential for a quick recovery." (Dkt. 15 at 7 n.1.)

22     Yet, as noted by plaintiff in reply, this constitutes an inappropriate *post hoc* rationalization

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01  not offered by the ALJ.  In fact, it appears possible that the ALJ never considered Dr. Moore's

02  second evaluation.  He points to only the first evaluation in describing the evidence from Dr.

03  Moore (AR 17) and cites to that evaluation alone in assessing Dr. Moore's opinions (AR 22).

04  Therefore, the ALJ's possible failure to consider the second evaluation and failure to consider the

05  aggregate of the time periods at issue may call the validity of the ALJ's second reason into

06  question.  Because the ALJ only offered one other reason for not giving significant weight to Dr.

07  Moore's opinions, his assessment as a whole is called into question.

08        Plaintiff's final argument provides additional reasoning for finding the ALJ's assessment

09  of Dr. Moore's opinions insufficient.  She notes that the ALJ failed to mention the following

10  findings contained within Dr. Moore's January 2005 evaluation: (1) "Clinical observation, recent

11  history and patient self-report suggest difficulty in social settings due to panic and general anxiety.

12  She also demonstrates very low stress tolerance due to emotional concerns."  (AR 252); (2)

13  "Long-term prognosis is guarded given the chronic and recurrent nature of her difficulties, though

14  periods of remission are likely in light of her history."  (AR 255).  Plaintiff again asserts that the

15  ALJ may not reject "'significant probative evidence' without explanation." *Flores*, 49 F.3d at 571

16  (quoted source omitted).  The Commissioner does not respond to this argument.

17        Taken together with the above-described error, plaintiff demonstrates reversible error in

18  the ALJ's assessment of the opinions of Dr. Moore.  Dr. Moore's August 2005 evaluation

19  contains additional and similar statements, including: "Clinical observation reveals a tense and

20  anxious person who has difficulty in her interactions.  History is noteworthy for frequent episodes

21  of panic with subsequent seclusion to her home for fear of having a panic episode in public.  She

22  is constantly worried and ruminative and has difficulty controlling her motor activity.  Tolerance

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01  for stress is low due to emotional concerns." (AR 347.) Dr. Moore also again found plaintiff's

02  prognosis "somewhat guarded given the chronic and recurrent nature of her difficulties. . . ." (AR

03  350.)

04        Given all of the above, the ALJ should be directed to thoroughly reassess both evaluations

05  from Dr. Moore on remand. However, even taking Dr. Moore's opinions as true, the evidence

06  does not necessarily support a finding of disability. Accordingly, Dr. Moore's opinions should not

07  be credited as true.[2]

08  E.    <u>Brittany Keller, B.A.</u>

09        Plaintiff notes that the ALJ did not mention the contents of a May 30, 2006 letter from

10  Brittany Keller, B.A., a student therapist she saw at The Wellness Project (TWP). In that letter,

11  Keller indicated that plaintiff was still experiencing panic attacks that made it difficult for her to

12  leave her house on occasion, that she was "likely to exhibit difficulties in the work environment[]"

13  due to her panic symptoms, and that her "intense levels of anxiety" had recently caused her to

14  cease attempts to volunteer a few hours a week. (AR 282.)

15        The Commissioner acknowledges that Keller assessed moderate symptoms in the May 30,

16  2006 letter (*see id.* (assessing GAF of 57)) and that, although assessing treatment notes from TWP

17  ────────────────────

18      [2] Plaintiff also asserts the ALJ's failure to acknowledge that the findings of Drs. Bell, Ketcham, and Moore are consistent with the findings of Dr. Sandford Plant, her treating physician.

19  However, plaintiff fails to identify any specific error in the ALJ's assessment of this physician. A review of the ALJ's assessment reveals no error. (*See* AR 21 ("I note that treating physician

20  Sandford Plant, M.D., completed a form dated February 28, 2006, indicating the claimant is totally disabled beginning February 12, 2004, because of impairments including panic attacks, trigeminal

21  neuralgia and degenerative disc disease of the neck area. However, I have given little weight to that opinion. Dr. Plant has reported no specific functional limitations for the claimant other than

22  "pain" and "panic" and has reported no objective findings to support her opinion."; internal citation to record omitted) and AR 234 (Dr. Plant's February 28, 2006 form).)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  generally (*see* AR 20), the ALJ did not specifically comment on the May 2006 letter.  The

02  Commissioner argues that, as this opinion came from an unacceptable medical source, lacked any

03  functional limitations, and was non-probative, any error in this omission was harmless.

04        In evaluating the weight to be given to the opinion of medical providers, Social Security

05  regulations distinguish between "acceptable medical sources" and "other sources."  Acceptable

06  medical sources include, for example, licensed physicians and psychologists, while other non-

07  specified medical providers are considered "other sources."  20 C.F.R. §§ 404.1513(a) and (e),

08  416.913(a) and (e), and SSR 06-03p.  Less weight may be assigned to the opinions of other

09  sources than acceptable medical sources.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

10        "Since there is a requirement to consider all relevant evidence in an individual's case

11  record, the case record should reflect the consideration of opinions from medical sources who are

12  not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in

13  their professional capacity."  SSR 06-03p.  "[T]he adjudicator generally should explain the weight

14  given to opinions from these 'other sources,' or otherwise ensure that the discussion of the

15  evidence in the determination or decision allows a claimant or subsequent reviewer to follow the

16  adjudicator's reasoning, when such opinions may have an effect on the outcome of the case". *Id*.

17  Moreover, the Ninth Circuit Court of Appeals has held that "where the ALJ's error lies in a failure

18  to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

19  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

20  crediting the testimony, could have reached a different disability determination."    *Stout v.*

21  *Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

22        Here, Keller, a student therapist, is not an acceptable medical source under the regulations.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01  However, pursuant to SSR 06-3p, the ALJ was nonetheless required to consider the evidence from

02  this other source.  As noted by the Commissioner, the ALJ did generally assess the records from

03  TWP.  (AR 20.)  He even specifically discussed a report from Keller dated November 9, 2005,

04  wherein Keller assessed plaintiff with a GAF of 62, indicating mild symptoms or some difficulty

05  in functioning.  (*Id.* (referring to AR 320).)  However, he made no mention of Keller's subsequent

06  GAF appraisal, in May 2006, wherein she assessed a GAF of 57, indicating moderate symptoms

07  or moderate difficulty in functioning.

08         The  ALJ  should  address  Keller's  May  2006  letter  on  remand.    Contrary  to  the

09  Commissioner's  contention,  the  letter  can  be  said  to  assess  general  functional  limitations

10  associated  with  her  panic  and  to  constitute  probative  evidence.    It  is  notable  that  the  ALJ

11  specifically pointed to an earlier, more favorable GAF rating from Keller, while ignoring her more

12  recent rating which is supportive of greater limitations in plaintiff's functioning.  It cannot  be said

13  that no reasonable ALJ, when fully crediting Keller's opinions as contained within the May 2006

14  letter, could have reached a different disability determination.  However, as with the opinions of

15  Dr. Moore, the record in this case does not support crediting Keller's opinions as true.

16  F.     Dr. Anita Peterson and Dr. Thomas Clifford

17         Drs. Anita Peterson and Thomas Clifford completed Psychiatric Review Technique and

18  Mental RFC Assessment (MRFCA) forms concerning plaintiff on behalf of the State.  (AR 187-

19  204.)    The  ALJ  stated  that  his  assessment  of  plaintiff's  mental  limitations  was  "generally

20  consistent" with the opinions of Drs. Peterson and Clifford.  (AR 19.)

21         Plaintiff argues that the ALJ failed to consider numerous moderate limitations assessed by

22  these non-examining physicians on the MRFCA form.  (  *See* AR 202-03.)  The Commissioner

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01  responds that the narrative portion of the MRFCA form is clearly consistent with the ALJ's RFC.

02  (*See* AR 19, 204.)

03         As inferred by the Commissioner, an ALJ properly focuses on the narrative portion of an

04  MRFCA form, "Section III", rather than the MRFCA form checkboxes, "Section I". *See* Program

05  Operations Manual System (POMS) DI 25020.010 at B.1 ("The purpose of section I . . . on the

06  [MRFCA] is chiefly to have a worksheet to ensure that the psychiatrist or psychologist has

07  considered each of these pertinent mental activities and the claimant's or beneficiary's degree of

08  limitation for sustaining these activities over a normal workday and workweek on an ongoing,

09  appropriate, and independent basis. It is the narrative written by the psychiatrist or psychologist

10  in section III . . . of [the MRFCA] that adjudicators are to use as the assessment of RFC.") [3]

11  Here, Drs. Peterson and Clifford stated in the narrative portion of the form:

12         Dr. agrees with dx and the approach of the PTP [sic], but sees [panic disorder] as
        primary, and the probable reason that she has not made progress in tx. CL is credible
13      for anxiety and irritability.  She is mentally capable of detailed and complex work.
        She has moderate social impairments in ability to cooperate with others, work with
14      public or in a large group, and can be overtly irritable at times.  She demonstrates
        good adaptive skills for the workplace.  Adaption and attendance are affected,
15      however, by motivation.

16  (AR 204.)

17         The ALJ accurately described his findings of mild restrictions of activities of daily living,

18  moderate difficulties in maintaining social functioning, and no difficulties in maintaining

19  concentration, persistence and pace, as consistent with the opinions of Drs. Peterson and Clifford.

20  Moreover, as asserted by the Commissioner, the ALJ accounted for the moderate social

21  _____

22         [3] Although the POMS "does not have the force of law" it "is persuasive authority." *Warre
    v. Commissioner of the Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006).

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01   impairment assessed by these physicians by limiting plaintiff to no more than occasional contact

02   with the public and with co-workers for cooperative tasks.  (AR 19.)  For these reasons, plaintiff

03   fails to demonstrate any error in the ALJ's assessment of the opinions of Drs. Peterson and

04   Clifford.

05                                              Credibility

06           Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

07   reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In

08   finding a social security claimant's testimony unreliable, an ALJ must render a credibility

09   determination with sufficiently specific findings, supported by substantial evidence.  "General

10   findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

11   evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.  "In weighing a

12   claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either

13   in his testimony or between his testimony and his conduct, his daily activities, his work record, and

14   testimony from physicians and third parties concerning the nature, severity, and effect of the

15   symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

16   1997).

17           The ALJ in this case assessed plaintiff's credibility as follows:

18       After considering the evidence of record, I find that the claimant's medically
         determinable impairments could reasonably be expected to produce the alleged
19       symptoms, but that her statements concerning the intensity, persistence and limiting
         effects of these symptoms are not entirely credible.
20
21       Although the evidence reveals the claimant has been diagnosed with impairments
         which can be expected to result in some pain and limitation, the objective evidence
         does not fully support her allegations that her impairments results [sic] in inability to
22       perform all work activity.  Her complaints of muscle weakness and reported

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01   limitations in standing and walking are not consistent with results of neurological
02   examinations performed by Dr. Bell which reveal no muscle wasting, weakness,
     atrophy, or fasciculations.  In addition, they are inconsistent with the report of Dr.
03   Herzberg that although the claimant had reported a history of lower extremity tingling
     and weakness, such was not demonstrated on examination.  Her complaints are
04   further inconsistent with the opinion of examining physician Lawrence Neville, M.D.,
     that the claimant could be expected to stand and/or walk eight hours of an eight-hour
05   workday.  While the claimant has reported pain in both hips, x-rays of the bilateral
     hips and pelvis performed in July 2006 revealed only mild degenerative changes.  MRI
06   of the cervical spine performed in August 2006 revealed no cervical disc herniation
     or significant intrinsic cord lesion.

07   The claimant's reports of worsening symptoms of anxiety and facial pain also appear
     to be overstated.  She has reported those symptoms began more than 10 years ago at
08   age 30 and she demonstrated an ability to perform substantial gainful activity in skilled
     work as an escrow officer.  Medical and treatment records reveal no documented
09   changes in her condition since February 2004 when she alleges she became disabled,
     other than her subjective reports.  She reported to Dr. Ketcham she goes out two to
10   three times per week.  Her symptoms of anxiety are currently treated with prescribed
     Klonopin (an anti-anxiety agent) which she testified she takes immediately upon
11   wakening in the morning.  In mental health treatment records the claimant is typically
     described as appearing "worn out", "frustrated", "depressed", and "tearful" rather
12   than suffering from significant anxiety.  On March 8, 2006, it was reported that she
     "presented as more confident and calm than she has in the past".  The most recent
13   record dated June 8, 2006, reveals that although the claimant reported she was "really
     anxious" that morning, her therapist reported she "appeared to be fairly calm in
14   session".  Despite her reported anxiety, she has been able to attend church group
     meetings.  In June 2005 she reported having a "very busy week" and attended a
15   wedding and reception.  On November 9, 2005, her GAF score was rated by her
     therapist at 62, indicating "some mild symptoms" or "some difficulty in social,
16   occupational, or school functioning, but generally functioning pretty well".  The
     claimant testified at the hearing she gets out three times a week if someone drives her
17   and she goes to church on Sunday and to the grocery store.  She acknowledged she
     can occasionally do this alone and stated she tries to go to a nearby store when is it
18   [sic] not crowded.

19   . . .

20   The claimant's credibility regarding the debilitating effects of her impairments is
     reduced by other factors.  She testified at the hearing that her job ended in February
21   2004 as a result of lay off rather than due to her impairments.  She additionally stated
     she collected unemployment benefits from February 2004 until September 2004.  In
22   order to qualify for such payments, she was required to sign a statement indicating

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01   that she was available for employment.  In addition, mental health treatment records
02   dated February 8, 2006, reveal the claimant was volunteering four hours per week for
     her former horticulture professor.  This is consistent with the report of Dr. Herbert
03   Orange that the claimant assisted him with office support on a voluntary basis.  While
     Dr. Orange indicated the claimant performed such work-related activity for only a
04   five-week period, it indicates an ability to perform some type of work activity.
     Additionally, mental health treatment records suggest the claimant performed that
05   work for longer than five weeks.  Records dated in April 4, 2006, reveal the claimant
     had been volunteering at "Herb's greenhouse" at least more than once per week.
06   Although she also discussed reducing her volunteer work to once per week, she
     reported her reason for this change was related to comments made by Herb which she
07   found inappropriate, rather than inability to continue that work because of her
     impairments.

08   (AR 19-21; internal citations to record omitted.)  The ALJ thereafter assessed the various medical

09   opinions and lay testimony in the record and concluded that plaintiff's allegations of her inability

10   to sustain work were not fully credible.  (AR 20-23.)

11        Plaintiff argues that the ALJ failed to provide any convincing reasons for not finding her

12   fully credible.  She notes that she did not mention any problem with muscle weakness or

13   limitations in standing and walking at the hearing, and that Dr. Bell did note she was having

14   spasms "up and down [her] entire back" in August 2006 (AR 258).  She complains that the ALJ's

15   assertion of her overstatement of her symptoms is neither specific nor convincing.  Plaintiff asserts

16   that the descriptions in the mental health treatment records are consistent with her testimony.  She

17   maintains that none of the activities described by the ALJ are inconsistent with her testimony as

18   to her limitations or demonstrate her ability to work full time.  *See Reddick v. Chater*, 157 F.3d

19   715, 722 (9th Cir. 1998) ("Several courts, including this one, have recognized that disability

20   claimants should not be penalized for attempting to lead normal lives in the face of their

21   limitations.") She points to a July 2004 letter from Dr. Ketcham as supporting the assertion that

22   her February 2004 layoff was, in fact, voluntary.  (AR 172.) Plaintiff also argues that an individual

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01  can receive unemployment if they are able and willing to do part-time work, whereas the ability

02  to perform part-time work does not necessarily disqualify a claimant from receiving Social

03  Security disability benefits.  Finally, plaintiff asserts that her ability to volunteer for four hours per

04  week for a short time does not indicate an ability to perform full-time work.

05       The Commissioner avers that Dr. Goranson's observation as to plaintiff's attempt to

06  portray herself as disabled suggests the possibility of malingering. (*See* AR 175, 177.)  The

07  Commissioner further argues that the ALJ nevertheless provided clear and convincing reasons for

08  not finding plaintiff fully credible.  He asserts that the evidence as to plaintiff's activities do reflect

09  an inconsistency with plaintiff's alleged level of impairment, that plaintiff's assertion in seeking

10  unemployment benefits that she could perform any level of work shows she is not as impaired as

11  alleged, and that her four hour per week volunteer work indicates an ability to perform some type

12  of work activity.

13       As noted by plaintiff in her reply, the Commissioner's argument as to possible malingering

14  is a *post hoc* rationalization not relied upon by the ALJ.  Plaintiff also raises some other possible

15  problems in the ALJ's credibility assessment.  For example, the record is not entirely clear as to

16  whether plaintiff left her job in February 2004 due to a voluntary or involuntary layoff.  (*See* AR

17  172 and 404-05.)  However, taken as a whole, it can be said that the ALJ provided clear and

18  convincing reasons for finding plaintiff less than fully credible.  At the same time, because of the

19  errors identified above, the ALJ's credibility assessment may well be impacted and require

20  reassessment on remand.  As such, the ALJ should reconsider plaintiff's credibility, as needed, on

21  remand.

22  / / /

01                                     Step Three

02          At step three, the ALJ must consider whether the claimant's impairments meet or equal

03  one of the impairments in the "Listing of Impairments" set forth in Appendix 1 to 20 C.F.R. Part

04  404, Subpart P.  Plaintiff bears the burden of proving the existence of impairments meeting or

05  equaling a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

06          Plaintiff argues that the ALJ erred in concluding that her impairments did not meet or equal

07  any listing.  She avers that the medical records in this case support a finding that she meets or

08  equals the "B" criteria of Listing 12.06 in that she has an anxiety disorder that causes marked

09  limitation in her social functioning and in her concentration, persistence, or pace.  *See* 20 C.F.R.

10  Part 404, Subpart P, App. 1, § 12.06.  In response, the Commissioner notes that plaintiff offers

11  no specific citation to the record supporting her assertion that she meets the criteria for listing

12  12.06.  He argues that the ALJ's step three finding was appropriate and should be affirmed.

13  Plaintiff, in reply, points to the summary of evidence provided in her opening brief as supporting

14  her contention that she meets a listing.  (*See* Dkt. 11 at 2-9.)

15          This argument fails.  Plaintiff must do more than point generally to the record. *Cf. Burch

16  v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined

17  effects of a claimant's impairments or compare them to any listing in an equivalency determination,

18  unless the claimant presents evidence in an effort to establish equivalence.") (citing *Lewis v. A*pfel,

19  236 F.3d 503, 514 (9th Cir. 2001)).  Here, at best, given Dr. Moore's findings *(see* AR 252, 347),

20  the record provides arguable support for the conclusion that plaintiff meets one of the "B" criteria

21  for listing 12.06 (marked difficulties in social functioning).  In order to meet or equal this listing,

22  however, plaintiff would have to demonstrate an additional marked restriction or repeated

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01  episodes of decompensation. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 12.06 (B).  Because

02  she fails to do so, her step three argument fails.

03                                                    <u>Steps Four and Five</u>

04              Plaintiff argues that the errors associated with the assessment of the physicians' opinions

05  and her credibility necessarily impact the ALJ's RFC assessment at step four and the hypothetical

06  proffered to the ALJ at step five.  For example, the vocational expert testified that plaintiff would

07  not be able to maintain employment if she had a marked limitation in her ability to tolerate the

08  pressures and expectations of a normal work setting – as opined by Dr. Moore.  (AR 412.)

09  Because the ALJ erred in assessing Dr. Moore's opinions and in failing to address the May 2006

10  letter from Brittany Keller, the RFC assessment and the content of the hypothetical proffered to

11  the vocational expert may well be implicated and require reassessment of these steps on remand.

12  Therefore, the ALJ, to the extent necessary, should reassess plaintiff's claims at steps four and

13  five.  The undersigned notes, however, that beyond the potential implications of errors at earlier

14  steps, plaintiff does not otherwise demonstrate any error at these steps of the sequential

15  evaluation.

16                                                          <u>Remand</u>

17              The Court has discretion to remand for further proceedings or to award benefits.  *See*

18  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits

19  where "the record has been fully developed and further administrative proceedings would serve

20  no useful purpose."  *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

21              Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient
             reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that
22           must be resolved before a determination of disability can be made; and (3) it is clear

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

01    from the record that the ALJ would be required to find the claimant disabled if he
      considered the claimant's evidence.

02

03    *Id.* at 1076-77.

04    Plaintiff argues that all of the circumstances supporting an award of benefits exist in this

05    case.  She maintains that the Court should credit the opinions of her physicians and her testimony

06    as true, and that the evidence in this case supports a finding that her anxiety disorder meets the

07    requirements of listing 12.06 or, alternatively, that her functional limitations have prevented her

08    from performing any full-time competitive work on a sustained basis since February 6, 2004.

09    However, as reflected above, plaintiff fails to establish a basis for crediting the opinions of her

10    physicians or her own testimony as true, and fails to establish that she meets the requirements of

11    a listing.  The undersigned concludes that further administrative proceedings in this case would

12    serve a useful purpose.

13    Plaintiff also argues that, if remanded for a new hearing, this matter should be assigned to

14    a different ALJ.  Pointing to the ALJ's credibility finding and a letter she wrote to the Appeals

15    Council complaining as to the ALJ's bias (AR 351-52), plaintiff expresses doubt as to the ALJ's

16    capability of fairly considering her claims on remand.  The Commissioner objects to this request,

17    asserting that plaintiff has pointed to nothing in the ALJ's decision or conduct at the hearing that

18    would demonstrate his bias.

19    In order to justify the assignment of a new ALJ based on a claim of bias, plaintiff must

20    show  that "'the ALJ's behavior, in the context of the whole case, was "so extreme as to display

21    clear inability to render fair judgment."'" *Bayliss v. Barnhart*, 427 F.3d 1211, 1214-15 (9th Cir.

22    2005) (quoting *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United*

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

01 | *States*, 510 U.S. 540, 551 (1994))).  The Court starts with the presumption that the ALJ was

02 | unbiased. *Id*. at 1215 (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982)). Plaintiff can rebut

03 | the presumption by showing a "'conflict of interest or some other specific reason for

04 | disqualification.'" *Id*. (quoting *Schweiker*, 456 U.S. at 195).

05 |       As argued by the Commissioner, there is no indication of bias on the part of the ALJ in this

06 | case.  In reply to this argument, plaintiff contends she is not arguing bias and reiterates her

07 | contention of doubt as to the ALJ's capability of fairly considering her claim.  However, plaintiff

08 | fails to justify the assignment of a new ALJ.  This Court routinely remands matters to ALJs who

09 | previously questioned the credibility of claimants.  Nor does plaintiff's letter to the Appeals

10 | Council support the need for a remand.  Although she asserts her suspicion of bias on the part of

11 | the ALJ and indicates that various aspects of his ruling have caused her distress and anxiety (AR

12 | 352), the Court must presume that the ALJ would remain unbiased on remand.  As such, this

13 | matter need not be remanded to a different ALJ.

14 | **CONCLUSION**

15 |      For the reasons set forth above, this matter should be REMANDED for further

16 | administrative proceedings.

17 |      DATED this 3rd day of March, 2008.

18

19 | Mary Alice Theiler
United States Magistrate Judge

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -25